**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-40388

RX.COM

Plaintiff - Appellant

v.

MEDCO HEALTH SOLUTIONS, INC.; CAREMARK RX INC.; EXPRESS
SCRIPTS, INC.

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:04-CV-227

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:[*]

Plaintiff Rx.com brought this lawsuit alleging that the pharmacy benefit
managers, Caremark RX, Inc. ("Caremark"), Medco Health Solutions, Inc.
("Medco"), and Express Scripts, Inc. ("Express Scripts") (collectively
"Defendants") suppressed competition by "refusal to deal" and "denying them
access to their networks unless upside was shared, and otherwise acting in
concert with one another" to frustrate competition. Rx.com asserted claims for:

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

(1) agreement in restraint of trade in violation of section 1 of the Sherman Act; (2) conspiracy to monopolize in violation of section 2 of the Sherman Act; and (3) attempted monopolization in violation of section 2 of the Sherman Act. The district court granted summary judgment to Defendants. Because we find that the statute of limitations bars these claims, we AFFIRM.

## I. Background

Defendants are pharmacy benefit managers ("PBMs"), which are third party administrators of prescription drug programs for health insurance plans, employers, unions, governmental entities, and others. From December 1998 to June 1999, Defendants discussed among themselves the threat to their business of internet pharmacies. There is some evidence that Defendants collectively decided to exclude all internet pharmacies from access to their networks to prevent the internet pharmacies from competing with Defendants' direct mail businesses.

Rx.com applied for admission into each of the Defendants' networks. Those requests were denied as follows: (1) by Caremark, on February 14, 2000; (2) by Medco, first on October 26, 1999 and then on February 15, 2000; and (3) by Express Scripts in February of 2000. This lawsuit was filed on October 8, 2004. Thus, unless some ground exists for tolling the statute of limitation or beginning accrual of the causes of action later than February 2000, these claims are time-barred. 15 U.S.C. § 15b (2006). Rx.com contends that limitations does not bar its claims for the following reasons: (1) the claims did not accrue until some time after October 2000, when the injury was discoverable; (2) Defendants committed "continuing violations" through 2001; (3) Defendants' fraudulent concealment tolls limitations; and (4) the limitations period should be equitably tolled for the period of time when Rx.com lacked officers and directors.

## II. Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 354 (5th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. Discussion

### A. Accrual

The United States Code provides that "[a]ny action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). "[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date . . ." *Id*. at 339.

The district court held that Rx.com's antitrust claims accrued in February 2000, by which time its internet pharmacy had been refused admission by each Defendant. Rx.com insists, however, that its claims did not accrue until it became aware of circumstances which, in the exercise of reasonable diligence, would lead to the discovery of facts that would allow it to file suit; Defendants argue that the limitations clock began to run when Rx.com had knowledge of its injury.

The United States Supreme Court answered this question in *Rotella v. Wood*, 528 U.S. 549, 555 (2000), stating, "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the

3

other elements of a claim, is what starts the clock." Applying *Rotella* to the present case, the injury of which Rx.com complains is exclusion from the market by Defendants, a fact known to it in February 2000 when its application to enter into the Defendants' networks had been denied. On February 29, 2000, Rx.com complained in writing to the FTC that "2/3 of the requests from our prospective customers have to be turned away because certain PBM's refuse to allow Rx.com into their networks." Joseph Rosson, co-founder and CEO of Rx.com, testified in an unrelated case that he always believed that what the Defendants were doing was illegal. Even though Rx.com may not have known all the details of the Defendants' concerted conduct, it knew it was injured, suspected illegality, and had sufficient knowledge to complain to the FTC. Under *Rotella*, then, the clock began to run in February of 2000.

## B.    Continuing Violations

Rx.com asserts that even if some of its claims accrued in February of 2000, Defendants' continuing violations of the antitrust laws tolled limitations. Defendants assert that there was no continuing violation, and that in any event, they only reiterated their final decisions to exclude Rx.com from their networks.

Under the continuing conspiracy theory, "each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and . . . the statute of limitations runs from the commission of the act." *Zenith*, 401 U.S. at 338; *see also Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982); *Poster Exch. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 125 (5th Cir. 1975). Rx.com failed to offer evidence of "a specific act or word of refusal during the limitations period." *Poster Exch.*, 517 F.2d at 129. In other words, Rx.com failed to offer evidence that Defendants reiterated their refusals to admit Rx.com to their networks during the limitations period. Thus, Rx.com failed to raise a fact

issue on its "continuing violations" claim sufficient to defeat the limitations defense.

## C.    Fraudulent Concealment

Rx.com contends that Defendants fraudulently concealed its causes of action. In order to avoid summary judgment, Rx.com was required to raise a fact issue as to two elements: "first, that the defendants concealed the conduct complained of, and second, that the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim." *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988) (internal quotation and citation omitted). To satisfy the first element, the defendants must have engaged in "affirmative acts of concealment." *Id.* at 1531. In the present case, Rx.com argues that the secret communications between the Defendants while they each claimed they were making unilateral decisions and publicly stated they were horizontal competitors constitute fraudulent concealment.

However, "[c]oncealment by defendant only by silence is not enough. [The defendant] must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry." *Allan Constr.*, 851 F.2d at 1532 (quoting *Crummer Co. v. Du Pont*, 255 F.2d 425, 432 (5th Cir. 1958) (alteration in original)). Similarly, "denial of wrongdoing is no more an act of concealment than is silence" unless "the parties are in a fiduciary relationship, or where the circumstances indicate that it was reasonable for the plaintiff to rely on defendant's denial." *Id.* at 1532-33. Here, there is no such affirmative act of concealment on the part of the Defendants.

## D.    Equitable Tolling

The issue of equitable tolling is subject to differing standards of review depending on the basis of the district court's decision. If the district court denied equitable tolling as a matter of law, this court's review is de novo. *FDIC v.*

*Dawson*, 4 F.3d 1303, 1308 (5th Cir. 1993). Alternatively, a denial that stems from the district court's weighing of the equities is reviewed for abuse of discretion. *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002) (reviewing district court's refusal to toll Title VII limitations period on motion to dismiss for abuse of discretion); *United States v. Patterson*, 211 F.3d 927, 931 (5th Cir. 2000) (reviewing district court's refusal to toll Anti-Terrorism and Effective Death Penalty Act limitations period on motion to dismiss for abuse of discretion); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (explaining that district court's discretionary refusal to toll limitations should be reviewed for abuse of discretion, even where made on the pleadings). "A district court abuses its discretion when it bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact." *James v. Cain*, 56 F.3d 662, 665 (5th Cir. 1995) (citing *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994)).

In the case before us, the district court exercised discretion in not equitably tolling Rx.com's claims. The district court stated in its order: "[T]he Court finds that Plaintiff should be charged with the duty to pursue its claims. Since a derivative cause of action was always available to Mr. Rosson or other shareholders, the Court concludes that this does not constitute the 'rare and exceptional circumstances' that would equitably toll the statute of limitations."

We have stated that "'[t]he doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *Patterson*, 211 F.3d at 930 (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "'Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Id.* at 930-31 (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).

All of the officers and directors of Rx.com resigned in May 2001, and Rx.com did not regain officers and directors until April 2004. Rx.com asserts

that the resignation of its officers and directors was an exceptional circumstance warranting equitable tolling, but fails to cite any authority on point. Rather, Rx.com relies on cases discussing the adverse domination rule, which tolls limitations when the board is controlled by those culpably involved in the wrongful conduct on which the action is based. *See FDIC v. Henderson*, 61 F.3d 421, 425-26 (5th Cir. 1995). In this case, by contrast, there was no obstacle preventing a shareholder from protecting Rx.com's rights. Rosson, former CEO and co-founder of Rx.com, or any other shareholder, could have called a special meeting to appoint a new board of directors after the resignations of May 2001. *See* DEL. CODE ANN. tit. 8, § 223(a) (2002) (providing that when a corporation does not have any directors because of death, resignation, or any other cause, any shareholder may call a special meeting for the purposes of electing new directors). Alternatively, Rosson or another shareholder could have brought a derivative suit on Rx.com's behalf. *See Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 293-94 (Del. 1999).[1] In fact, Rosson, who by early 2000 already thought Defendants were acting unlawfully in denying Rx.com access to their networks, did bring a shareholder's derivative lawsuit claim alleging a third party caused Rx.com's demise. Accordingly, we find that the district court did not abuse its discretion when it refused to equitably toll the statute of limitations.

---

[1] Rx.com also contends that, during a period of time, it was under a court-appointed receivership. Rx.com suggests that the pendency of the receivership is another reason supporting equitable tolling. It argues that the court order appointing the receiver did not specifically authorize the bringing of this type of litigation. However, the receiver in question was specifically appointed "pursuant to the applicable provisions of the . . . Texas Civil Practice and Remedies Code." The "applicable provision" allows a receiver to pursue litigation without court approval. TEX. CIV. PRAC. & REM. CODE § 64.033 (Vernon 2008). Also, Rx.com has not brought forth any facts suggesting that, even if court approval to pursue litigation were required, the receiver could not have sought and obtained such approval.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the summary judgment of the district court.